Good morning, Mr. Conn. Good morning, and may it please the Court. Conrad Conn on behalf of the appellant Matthew Caniff. I'd like to begin today by focusing on Mr. Caniff's advertising conviction. When Congress enacted 18 U.S.C. 2251d, it did not prescribe all communications seeking and offering child pornography. It prescribed a limited subset of communications, notices and advertisements that are made, printed, and published. The terms notices and advertisements, the plain meaning in relation to one another, and in the context of the whole statute, show that 2251d is best read to include a public component. Indeed, every… Is there a difference between notice and advertisement? Absolutely, Your Honor. What's the difference? What did Congress have in mind when they strung together both any notice or putting it in the disjunctive advertisement? I think that question has three parts. Okay, so notice and advertisement are different. A notice is generally something that it's an announcement that conveys information. A notice doesn't have to be an advertisement. So to use a non-child pornography example. So a notice would be the act of imparting information? It would be an announcement about information. Absolutely, Your Honor. So if I impart information to others online, that's a notice? Generally speaking, but not in the context of this statute. Well, where does it say that the notice has to be a public notice? Couldn't Congress have said if they wanted to that the notice was, quote, a public notice or advertisement if that's really what they were after? They said what they were really after. Well, they didn't say public notice. They just said notice. And I want you to tell me if notice means, and you accept that it does, the act of imparting information and related senses, why that wouldn't be enough here? Well, Your Honor, Congress said what it meant when it said make, print, or publish a notice or advertisement. Context determines meaning. Every statute about – every canon of construction about reading statutes in context, plain meaning, no cetera socius, a negative implication canon, showed this is best read to include a public component. And you ask why did Congress try to limit the public components? Well, the legislative – to accept there's any ambiguity after looking at those canons of construction. The legislative history further supports this. If you look at the House report about the enactment of the dispense, they specifically mention magazines, newsletters, electronic bulletin boards. Of course, the exact language is to knowingly make, print, or publish, or cause to be made, printed, or published, any notice or advertisement, seeking or offering to receive or exchange, blah, blah, blah. Pretty broad, pretty expansive language they used. Your Honor, the word any modifies notice and advertisement, but we have to know what notice or advertisement means. Right, so any means every. Every notice or advertisement. But what does notice or advertisement mean? It's anything that qualifies. I know what an advertisement means. The focal point here is what does a notice mean. And in the context of this statute, if Congress wanted to get everything that has the general definition of a notice, it would have said we prescribe all communications seeking and offering notices – sorry, all communications seeking or offering child pornography. But they didn't say that because the legislative history bears out. They were concerned about magazines, newsletters, bulletin boards. Well, but the language was not defined by Congress, so isn't the assumption, since they didn't define it, that it should be given its ordinary and customary meaning? And that's what the court did here to the jury in their inquiry, and the court said it's an ordinary and customary meaning. It doesn't need to be defined. You use your common sense on what it means. Isn't that the appropriate way to handle this? It is, Your Honor, but the ordinary meaning doesn't mean to look at a word unmoored from the context of a statute. The ordinary meaning is inherently a contextual endeavor. If the gas company tells you you haven't paid your bill this month and it's going to cut off your gas, it comes in as a notice that your gas bill is going to be cut off. There's no public context to that. It's a private communication, a notice. I'm giving somebody notice of what I'm going to do, and in this case it seems to me the defendant gave notice that this is what I'm going to do to you if we ever meet, and a notice that I am interested in receiving photographs of you that are provocative. Your Honor, again, you can't just look at the word notice in its general sense. You have to look at it in the context of the statute, make, print, or publish a notice or advertisement. Nocitor Associates says we have to look at those and see where the association between those words. If the words instead make, print, or publish had included them, would that be a different case? I think that would be a different case, Your Honor, and that might be a tougher case, but this is make, print, or publish. You look at the legislative history. You look at the context of the statute. What does make mean? Well – Let's hold aside print or publish for a moment, and let's focus on the verb to make any notice. Well, again, I think make has to be understood in relation to print or publish. Why? The canon of Nocitor Associates tells us – Well, there are only three verbs strung together, not 33. Nocitor Associates can apply with two words. Well, I understand. I mean it's not about a list. It's about an association. It's about making sure we're not giving words unintended breadth. So the word make has to be understood in relation – Or in that short sequence, which tells that no word should be superfluous. So obviously the make, you would think, would be broader or different from publish. I think so, Your Honor, but what do they have in common? They all have in common this idea of producing something for public consumption, and that's further supported when you look at – Where do you get that for public consumption? That's what we're all confused about. I think when you look at print and publish, that informs what has to inform what make means. And you look further and notice in advertisement, we're not talking about all communications. What then does the verb make add to print or publish? Well, someone can make something – Let me just finish my question. I'm sorry, Your Honor. Is it a superfluous verb? No, Your Honor. And what does it add to the verb to print or to publish? One can make something without printing or publishing. The statute is designed to get anybody who's in the process of sending out an advertisement or a notice. It doesn't have to be the person who makes the advertisement. It could be the person who sends it out. So this is like a sort of chain of – I think that would be a reasonable way to make sure that there isn't superfluity. However, it is still clear in context that they're not targeting all communications. They're targeting limited subset communications. Let me ask you this. I get it that this is a person-to-person text. But I assume if this were a message board or Facebook or Twitter, your position is totally different. Totally different. And if it were a group text, totally different. So let me clarify that what we mean by a public component, something does not need to be sent to the general public. Posting on a chat room is a community. Two people? Context matters, Your Honor, and that's the point. This is a jury question, and the jury will have to look at the context of the communication, all the facts surrounding it, and say, does this have a public aspect to it? I guess to Judge Ebell's question – I mean Judge Ebell asked you earlier about sort of isn't this – it's an ordinary meaning. Isn't it common sense to send it to the jury? And you say, sure, but the word has sort of this sort of platonic meaning from which a jury couldn't depart. And so I guess I'm asking you now, I'm sort of walking you down the spectrum from Facebook and Twitter at the one end to a single person-to-person text at the other, and you get to a multi-person group text and then a three-person group text. And at what point along the way are you going to sort of say, ah, just send it to the jury and let them figure it out? It's always going to be a jury question, but context matters. Not every three-person group text is the same. Not every chat room is the same. When we're talking about communications, it's naturally fluid. It's not about the medium. It's about the context. And juries have to go and look at the context of communication. What is the relationship between the communicators? How big is the audience? What may be a relevant factor? Is this going to be shown later in a court proceeding or to redeem an offer? I guess what I'm saying is if a three-person group text case goes to the jury, do you have a motion for judgment of acquittal because the statute does not reach that conduct? Sometimes, and it's going to depend on context. If it's three longtime friends who are just chumming it up and something about unrelated activities, and it happens one of them says, hey, I'm looking for child pornography, there would be a strong argument. There's not a public component there. But if it's three people who only know each other because of their participation in the child pornography community, maybe that doesn't count. Maybe they're all talking in relation on a message board. If a three-person chat room and I say, hey, to one person, I would like your pictures of child pornography, that may count. So it's going to be context-specific. Whether or not a three-person message makes it to the jury or not will depend on context. Let me read to you what the Third Circuit said in Harrison, comment on it. Referring to the difference between notice and advertisement to the general public, they suggest that if notice is interpreted to mean an announcement to the general public, it leaves very little useful work for the word advertisement, which is itself defined as a public notice. The court then assumed that by including both terms, the drafters meant some difference between them, advertisement implicating an announcement to a wider audience, notice simply meaning the communication of any information to another party. Your Honor, I see my time has expired. May I answer? Please. A couple of responses to that, Your Honor. The case you're referring to is a case about the Guidelines 2G. Oh, I understand that. And the language in the Guidelines is fundamentally different. We're dealing with a statute that says make, print, or publish a notice or advertisement with a legislative history showing exactly what Congress was getting at. The Guidelines talk about any offense involving a notice or advertisement. The involving language is much broader. And then on top of that, the commentary to that Guideline provision provides a rule of construction. It says construe this Guideline broadly. And the purpose was much broader. The purpose was to generally target the child pornography community. That case is very opposite for that reason alone. But I would further submit that if you were just to read notice to include private and advertisement to include public, well, that would violate the very canons we're talking about. Noster, so cease, plus it would effectively read make, print, and publish out of statute. That just would effectively mean all communications count. I've got it. Thanks very much. And you have reserved, Mr. Kahn, your full five minutes for rebuttal. Thank you, Your Honor. May it please the court. My name is David Waterman on behalf of the United States. I would like to focus on two points today in response to Appellant's arguments. First, a notice or an advertisement can be made to one person or to many. Indeed, Appellant recognizes in his response to our Rule 28J letter from last week that a one-to-one communication qualifies under Section 2251D. Second, contrary to Appellant's arguments this morning, the dictionary definitions, the canons of statutory construction, and the legislative history do not support the interpretation that notice and advertisement requires a public component. Considering first his concession in his response letter from last week, he notes that a one-to-one communication can qualify, but it depends on the context and the intent of the sender. And that is what he emphasized here today. Those, as this court is well aware, are prototypical jury questions. In fact, relatedly, Appellant cited in his Rule 28J letter in April earlier this year, United States v. Brown. And that was a Ninth Circuit decision which held that the district court violated the defendant's Sixth Amendment right to present a defense because it prohibited him from arguing to the jury that his post to an online bulletin board was not an advertisement or notice. Unlike United States v. Brown here, Caniff's counsel was able to present that argument to the jury. But perhaps more importantly, the jury asked during its deliberations, what is the definition of notice or should we determine that? Caniff's counsel never provided a definition to the jury. And subsequently, the jury found after analyzing all the evidence that the text messages constituted a notice or advertisement under Section 2251. Did the defendant object to that court response to the jury inquiry? No, he did not, Your Honor. How do we weigh that into the factor here of whether it was either invited error or something? I don't think it was invited error here because – They didn't argue for it. Correct. But if they didn't object, then do we have a – does that factor into the analysis or not? I don't believe so, Your Honor. It would be different if there was a certain definition that was requested such as in United States v. Peterson, which was the case that Appellant cited in his response to our Rule 28J letter last week. There they requested a specific definition for advertisement, and that is why there the district court noted that advertisement was on a one-to-one basis. Are there any cases, federal circuit cases, that say that you must give a jury instruction about the meaning of the word notice? No, Your Honor. And in fact, several circuits have done exactly what was done here. Is that not correct? At least two where they have said to the jury it's common words you figured out. That's correct, Your Honor. And that aligns with our common understanding of notices in common parlance. As Judge Marcus alluded to earlier, it is an act of imparting information. It can be a circumstance where a landlord is providing a notice to a delinquent tenant regarding an eviction, or it could be a notice from the court to a person regarding to appear in a civil or criminal proceeding. In fairness, those uses of the word notice, both those and Judge Ebell's example about your gas is about to be cut off, those are sort of like formal, legal, sort of term of art-ish, right? I mean that's a notice in a term of art sense. Not necessarily, Judge Newsom. I would disagree. There are circumstances where you have a notice. I think a prime example of that would be a text message that's sent from a doctor's or a dentist's office to a patient regarding an upcoming appointment. That would be a tailored notice on a one-to-one basis. Of course, the statute here doesn't just talk of one kind of notice or another kind of notice. It speaks as broadly as they could and says any notice. Correct, Your Honor. It does. Whether it's a formal notice that is kind of replete with legal implication or just imparting any information to anyone, that would be any notice, would it not? Yes, that's right, Your Honor. And in response to the canons of statutory construction that Appellant argued for this morning, he had argued that a word may be known by the company it keeps. He referred to that canon of statutory construction. That same argument was made by the appellant in the Tenth Circuit decision, United States v. Franklin, when the appellant argued that because advertisement often implies a public component, so too should notice because they are near each other. However, the court rejected that argument as, in the court's words, an invalid as a matter of law argument because there were only two words there as opposed to a series. So the canon doesn't apply there. What's more applicable in this context, I would argue, is that the canon of construction that leads to absurd results are disfavored. If this court were to adopt Appellant's interpretation, it would provide an avenue, a loophole for one such as Caniff to be able to evade the statute by sending notices or advertisements via different, more advanced technological means. There are a slew of other statutes, right? I mean, there are a slew of other statutes. One under which you did charge this guy. Others, maybe you guys had your own reasons for not charging him, but it seems to apply foursquare. So it's not like he's escaping liability. He's not escaping- There's a subsection, but there are lots of other sections and subsections and sub-sub-subsections that seem to get at this kind of thing. Correct, Judge Newsom. His conduct was prosecuted, but the distinction is it does decriminalize certain other types of conduct. Count two pertains to different conduct than count three. Count three, which is 2251A, is a specific intent crime that requires a substantial step, whereas count two was 2251D, which is a general intent crime. There are circumstances you can think of where conduct would be prosecuted under the second count but not the third. For example, an individual contacting an adult female requesting child pornography, that would be a crime that could be prosecuted under count two, 2251D, but not 2251A. Conversely, if someone were to bring a camera into a school and put a hidden camera into a locker room or a restroom in an attempt to produce child pornography, that would be penalized under 2251D but not 2251A. Moreover, Congress did not intend for there to be this loophole. In fact, the language in the legislative history appellant referred to, and I'd like to note or emphasize, is that there seems to be a desire that advertising notice are adaptable to technological changes. There, the congressional report highlights that they were not going to limit its application to magazines or newsletters. Rather, Congress had the foresight to note that they were concerned about a recent technological phenomenon, the computer bulletin boards. And that's why Congress had that foresight and why those words are adaptable to more technological advances, such as messages like Judge Newsom said earlier via Facebook. The next case could be an individual attempting to contact someone via Facebook Messenger, via Instagram Direct Messenger, and they would still be one-to-one communications that qualify under the statute. But I think Mr. Kahn would say Congress's foresight is evident in the legislative history about bulletin boards. Fine, I'll give you bulletin boards. I'll give you public Facebook. I'll give you public Twitter. I'll give you some public group text, but one-to-one, he says, is just sort of different, right? And we would disagree based on the legislative history, based on the state candidates of statutory construction, that the legislature wanted these words to be read broadly based on the purpose of the legislation, which was to protect children and to punish those who would do them wrong. It is – Congress did not intend to create a loophole for one to simply be able to evade this statute via different means. Now, I see I still have about six minutes left, but unless the court has any other questions. Let me ask you this. Do you agree that this is not the most comfortable reading of make, print, or publish emails? I get it that we can – so we can probably kind of – you can kind of finagle your way into a world in which this person-to-person text qualifies. But is it all things considered the most comfortable reading of the statute? If I text a friend and say, will you grab me a Coca-Cola at the Shell station, have I sent a notice? No, no, no, not have I sent. Have I made a notice? Yes, and that's – I desire a Coca-Cola. You have. You have made a notice. Certain dictionary definitions would allow us to get to that point, but is that a comfortable understanding of what I did and made a notice? Yes, Your Honor. It is a – I never would have thought that. Is that the way people talk? That one made a notice? Yeah, I mean, if somebody says – your wife calls and says, stop and get a jug of milk at the store. Does she say, hi, I'm calling to give you a notice that you should bring home some milk? The test, Your Honor, isn't whether or not the words are comfortable, but whether the Congress intended to punish the crime and the acts that are being committed here. And based on the common understanding and the ordinary usage of these words, it is appropriate to interpret the statute in this way, especially based on the purpose behind which it was created, which, again, was to protect children and to assure that those who were seeking advertisements or offering advertisements or notices for child pornography would be penalized. I guess the question that I think Judge Ebell and I are both really asking in slightly different ways – I use the word comfortable, not quite the right word. You use the word ordinary, the better word. And you look up the word notice in the dictionary. There are a thousand definitions. You can surely find one that fits, that sort of fits this case. But is the ordinary understanding of make a notice – I think we've all agreed, print and publish out the window, advertisement out the window. We're really talking about making a notice. Is the jug of milk example or the Coca-Cola example, is that making a notice in ordinary speak? In ordinary speak, it perhaps is not the most commonplace use of the term, but that doesn't preclude its application based on the factual circumstances that arise. And as appellant noted, this is a jury determination. The jury was able to analyze the facts that were presented and to determine, based on all the evidence, that the text messages from Caniff to Mandy constituted notices, which was clear by the fact that they asked, what is the definition of the term notice, or should we determine that definition? And the second question they posed is to, or should we determine that definition, furthers the point that these are commonly used words. The jury believed that they could come up with a definition for notice. And based on United States v. Brown, as well as the other cases that we cite in our brief, Franklin and Grovo, it was rightly determined that the jury was the correct body to make that finding. And for that reason, we respectfully request that this court affirm the judgment of the district court. And unless the court has any other questions on this. Well, I mean, I'm having this concern about whether this is a legal appeal issue or a factual appeal issue. I mean, I would have thought that the better approach would be to say, we wanted a jury instruction defining notice. It's a legal term that needs to be defined. And we're going to fight about whether there's what the legal definition, which is what courts do. That's not the way this case was presented to us. It was presented to us with a given on the case history that notice is submitted as a factual question to the jury. So then the question is, was there simply no evidence from which the jury could have found that this was notice as the jury chooses to define it? Which would both parties seem to agree was was OK for the jury to do. And so it's not OK to tell a jury you're going to make a legal definition here. But it is OK to say to the jury, this term is common. It doesn't need a legal definition. You give it a practical definition. At that point, it becomes a question of fact. And that's a much harder case for the appellant to prevail on, because the jury then looked at this and said, factually, we think it's true. But so I'm just having I mean, I wish this case had been phrased as a request for a jury instruction of definition. And we would be fighting about it as a matter of law. But we're not. Well, thank you, Your Honor. I believe that based on the circumstances, United States v. Brown was correct in its analysis that this was a jury question. And because these are common or ordinary terms, the jury was the correct body to make that decision. Unless the court has any other questions. Thank you. Thank you, Your Honor. We respectfully request that this court affirm this. Can I just suggest that as you begin, you pick up right where Judge Bell left off about how this question is being presented? Absolutely, Your Honor. So I would argue that this is a sufficiency of the evidence case. Now, the jury was given the statutory language, make, print or publish a notice or advertisement. And that is naturally understood to have the public component. Now, here's perhaps it would have been better if the jury was instructed that it naturally. Let me ask you in that respect, Mr. Kahn. Did you ever say to the judge in words or substance, I want an instruction about the meaning of the term notice? And here's what it means. It's got this kind of public patina to it. There's something more than just Jones is communicating some kind of information to Smith. Did you ever ask the judge? I know at the back end when the jury question came in, you said, no, that's fine, let the jury decide it. But was there ever a request on the front end when you presented your instructions to the trial judge? I want you to give an instruction to the jury because it has a peculiar meaning in this context, in this statute. There was not a specific instructional request. However, what the jury was given was the statutory language. They were told they had to find, make, print or publish a notice or advertisement. Perhaps it would have been better if they were explicitly told about the public component, but it's natural in it. And what made matters worse was that we had argued in our JOA, we had argued to the jury. So notwithstanding, never having asked the judge to give an instruction, and notwithstanding having said at the back end when the jury said, what's the word mean? You acceded to the court's suggestion that the jury simply be told, just use an ordinary common sense meaning to it. As a matter of law, we ought to be concluding that notice necessarily could not comprehend what happened here? Yes, Your Honor. Because the jury was told it had to find that Mr. Gniff made, printed or published a notice or advertisement. Not that just he made it. Not just that is this a notice or an advertisement. The plain meaning of that phrase in context has a public component. What made matters troublesome here Not just the plain meaning. You say it's the only meaning, notwithstanding the breadth of the text, any notice. It's the best reading of the statute, Your Honor. It doesn't have to be the best reading. The question is, is it the only reading? It may not be the only reading, Your Honor, but when we're doing a sufficiency of the evidence argument, we have to know what the legal standard is to measure whether the evidence is sufficient. So we have to know what it means. We have to know what the best reading of the statute is to know whether the evidence is sufficient to meet the statute. There was nothing per se wrong with the jury instruction, but what had happened Let me ask you the question this way. If you had it to do all over again, the next case like this, and they come up with some regularity, what would you tell the judge to instruct the jury about the meaning of the word notice? I would tell the judge to instruct the jury that 2251D has a public component. What that means is that you should look at the communication in context. Is it public if I go on Facebook? It may be, yes, Your Honor. I'm just communicating with my daughter. She lives in Chicago. I live in Miami. Let me be clear about what I mean by public component. Is that a public component? If you post it. I send a message to my daughter. Like an email? Or I go on Facebook. Well, Facebook is a social media platform. You post something. Yeah, but it doesn't mean I'm posting it to the whole world. It can be much more refined and specified to a particular individual or only a few. So on this Facebook account are my daughter in Chicago and my son in Rochester. So I would argue that. And they have two grandchildren. I have two grandchildren with each child. So now I'm up to six. And I post some information to six people. No, I was in court in Jacksonville, and the weather was great, and I had a high old time. I had a terrific panel, and the lawyers were terrific, and it was really lots of fun. That's what I communicate to two children and four grandchildren. Is that a public notice? How does that fall into what you're talking about? I would say that probably isn't a public notice. How come? Because this is the test. Whether or not something has a public notice. Just feel that it's somehow different. I want you to articulate for me and for Judge Newsom what it is that gives it a certain public character that's distinct from simply imparting information of a particular character to a limited group or only one person. Here's the test, Your Honor. It's not a numbers game. It's not a medium game. It's a contextual inquiry, and there are going to be close cases. We're not saying it has to go to the general public. Maybe in some instances a one-on-one communication can count, but it's a contextual inquiry. You have to look at all the circumstances surrounding communication, and there are factors. All right, listen to this dialogue. Wouldn't you come away, if you were just a man from Mars, walked into the courtroom and listened to the dialogue, wouldn't you come away with a sense that maybe there's great wisdom in what the judge did here and he left it to the jury? Your Honor, I think if there was a man from Mars, he would come in here and say, I look at what Mr. Kniff did, and that, to me, is not ordinarily wise. The answer is no. It wouldn't be wise to let the jury decide this. I think it would be wise to let the jury decide this. Rather than giving them a particular definition. I think juries have to make contextual determinations in many cases all the time, in questions of intent, in circumstances, reasonableness, substantialness. This is another contextual determination a jury would have to make. It is not out of the ordinary, I would submit, Your Honor. Our test, it is a contextual determination. When you're saying contextual, I'm gathering from your dialogue with Judge Marcus that this is – you're saying it's not strictly a procedural or process analysis of a notice. It requires substantive looking at what you're talking about as well. I think so, Your Honor. So then notice is not just did it go to a lot of people or a few, which the way your brief started out by reading that way, your brief started out by saying it's got to go to a wide broadcast, just a factual process. Did it go to many or a few? But now in your dialogue with Judge Marcus, you're saying, no, it's not enough about whether it went to a lot of people or a few. That is, it's not process. It is substantive. Are you talking about the kind of thing that you would talk to lots of people about or only to a small group of people? And I think you lose on that one because I think Congress was very clear that they wanted this to cover a very small amount of solicitation of sexual activity with minors and not just to be requiring that you solicit that from many minors. Your Honor, I would simply say that what Congress was getting at was advertising in magazines, newsletters, bulletin boards, not the type of one-on-one personal communication that's akin to a phone call. Mr. Kniff's case is fairly straightforward. He went on a dating, what for his purposes was akin to a dating website. He met someone and in the course of flirting asked for pictures of themselves. No one would commonly call that making a notice. Everything about the context here shows it was personal. There was no formality. It wasn't in a chat room to a lot of people. His primary purpose wasn't to somehow obtain child pornography. There's nothing suggesting he was going to show these communications to other people later. My only point was that you're making – you're not arguing an alternative, clean, easy definition of notice. You are arguing an alternative definition which is much more complicated, that it cannot be answered merely by the process of who talked to whom and how many people you were talking to, even though your brief sounded to me that that's what your position was. But now you're arguing it is you've got to look not only at who talked to how many other people and how many people could get on that dialogue, but also you've got to look at the content of what they were saying and make some additional decision that this was the kind of thing you would say to many people or this is the kind of thing that you would only say to one person. But you've got to look at the substance as well as the process. That becomes much more complicated. And again, I'm wondering about the wisdom then of just saying, jury, you decide. Well, Your Honor, I would say two things. One, I don't think it's that complicated. Juries have to make close calls all the time and have to look at the circumstances of offenses all the time. That's their job, to make findings of fact, and we can make an instruction that advises them, here are factors, non-exhaustive list of factors you can look at, but you, the jury, have to determine based on all the evidence you've seen and all the argument you've heard, does this have the type of public component that Congress was trying to get at? The second thing I would say is that if you include all communications, you're going to render this offense redundant with solicitation and distribution, violating the principle of bringing these statutes in parameteria. This would just be a solicitation and distribution offense. Now, I would also like to – I see my time's expired. If I can briefly conclude on one thought. Just bring it to a head. We're five minutes over. We submit Mr. Kniff's communications do not qualify because they do not have a public component. That said, if Congress truly wanted to capture these types of communications, a text message during the course of a flirtation interaction, and subject that to a 15-year mandatory minimum penalty, it should plainly say so. Because these communications don't count, we respectfully request that you vacate Mr. Kniff's conviction on count two and order a new trial on the remaining counts. Thank you. Thank you very much. Thank you both.